```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

ELAINA ARAMBURU, on behalf of herself
and all others similarly situated,
                                              ORDER
                Plaintiffs,
                                              02-CV-6535 (MDG)
        - against -


HEALTHCARE FINANCIAL SERVICES, INC.,

                Defendant.
- - - - - - - - - - - - - - - - - - X
```

GO, United States Magistrate Judge:

    Plaintiff Elaina Aramburu ("Aramburu" or "plaintiff") brings this class action alleging a violation of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. Plaintiff moves pursuant to Fed. R. Civ. P. 23(e) for final approval of a settlement reached with defendant Healthcare Financial Services, Inc. ("Healthcare") on behalf of the class certified herein. For the reasons set forth below, the settlement is approved.

## FACTUAL AND PROCEDURAL BACKGROUND

    On December 13, 2002, plaintiff commenced this action on behalf of herself and similarly situated consumers alleging that defendant Healthcare sent collection letters that violated the FDCPA. Plaintiff is a consumer who allegedly incurred a personal

debt to Transcare, doing business as Metrocare, in the amount of $362. Complaint ("Compl.") (ct. doc. 1) at ¶ 15, Exh. A. On November 5, 2002, Healthcare, a collection agency, sent her a letter which contained the following language:

> PAYMENT DUE IMMEDIATELY.
>
> THIS ACCOUNT HAS BEEN ASSIGNED TO OUR OFFICE FOR COLLECTION.
>
> IF YOUR CHECK OR MONEY ORDER IS NOT RECEIVED IN THIS OFFICE WITHIN 30 DAYS WE SHALL RECOMMEND FURTHER ACTION BE TAKEN AGAINST YOU TO COLLECT THIS OUTSTANDING BALANCE.

Below a dotted line, the letter further stated:

> PLEASE READ BELOW
>
> THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> IN COMPLIANCE WITH THE PROVISIONS OF PARAGRAPH 809 OF THE CUSTOMER CREDIT PROTECTION ACT, AMENDMENTS, YOU ARE HEREBY NOTIFIED OF THE FOLLOWING:
>
> UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID.
>
> IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT [sic] AND MAIL YOU A COPY OF SUCH JUDGEMENT [sic] OR VERIFICATION.
>
> IF YOU REQUEST FROM THIS OFFICE IN WRITING, WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

Id. Plaintiff claims that defendant violated the FDCPA in that the collection letter she received included a statement contradicting the validation notice required by statute. Id.

at ¶ 17.  Healthcare answered and counterclaimed alleging that plaintiff had commenced the action in bad faith.  Ct. doc. 3.  Plaintiff seeks only statutory damages.  Compl. at ¶ 22.

On April 14, 2005, the Honorable Allyne R. Ross certified a class of "all persons to whom defendant sent initial communications in the form of the November 5, 2002 letter mailed to plaintiff Elaina Aramburu in an attempt to collect a consumer debt as of the date of plaintiff's complaint."  See ct. doc. 35.  Holding that the required validation notice contained in the November 5, 2002 letter was overshadowed by the demand for immediate payment in violation of section 1692g, Judge Ross also granted plaintiff's motion for summary judgment and denied defendant's cross-motion.

At a conference held on May 14, 2008, the attorneys reached an agreement in principle on a settlement amount.  See minute entry dated 5/14/08.  In June 2008, plaintiffs' counsel presented opposing counsel with a draft settlement agreement.  After further negotiations, the settlement agreement was fully executed in August 2008.

On December 4, 2008, I granted preliminary approval of the settlement, set a date for a hearing on whether the terms of the settlement were fair, reasonable and adequate and directed counsel to provide notice to the class.  See ct. doc. 81.

On December 18, 2008, approximately 2,058 class members were notified by mail of the terms of the settlement. Declaration of Joseph M. Fisher dated March 12, 2009 (ct. doc. 82-2) ("Fisher

Decl.") at ¶ 4.  No class member has filed an objection to the settlement.  Id. at ¶ 7.

In the settlement agreement, defendant agreed to pay $10,000 to plaintiffs, $25,000 to plaintiffs' counsel for attorneys' fees and $3,500 towards administration expenses.  Settlement Agreement (ct. doc. 74-3).  Additional administrative expenses would be paid from the amount allocated to plaintiffs and is currently estimated to be $2,500.  See Fisher Decl. at ¶ 9; Affirmation of Lawrence Katz dated March 19, 2009 (ct. doc. 82) at ¶ 9.  From the settlement amount paid to plaintiffs, $2,000 would be allocated to the named plaintiff.  Ct doc. 74-3.  The anticipated payment to each class member is approximately $75.00.  Any unclaimed funds will be distributed by grant to Brooklyn Legal Aid Society, Civil Division to be used to provide legal services to consumers.  Ct. doc. 74-3.

On March 27, 2009, a hearing was conducted to determine the fairness of the settlement.  No class members appeared at the hearing to object to the settlement, nor have any objections been received.

## DISCUSSION

In evaluating a proposed settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate.  See Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995).  Settlements are strongly favored as a

matter of policy, since "[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time." Evans v. Jeff D., 475 U.S. 717, 761 n.15 (1986). Thus, "[s]ettlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." In re EVCI Career Colls. Holding Corp. Sec. Litig., Nos. 05 Civ. 10240, 2007 WL 2230177, at *3 (S.D.N.Y. July 27, 2007) (quoting In re Sumitomo Copper Litig., 189 F.R.D. 274, 280 (S.D.N.Y. 1999)).

In evaluating the fairness of a settlement, a court should examine (1) the negotiating process that led up to the settlement, and (2) the substantive terms of the settlement. D'Amato v. Deutsche Bank, N.A., 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted). A court reviewing the procedural fairness of a settlement "must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" Id. (quoting Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)). The judge undertaking a fairness inquiry "has a fiduciary duty to ensure that the settlement is not the product of collusion." In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139, 146 (E.D.N.Y. 2000) (citing In re Warner Communic'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986)). A

proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's length negotiations conducted by capable counsel, well experienced in class action litigation. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 117 (2d Cir. 2005). In addition, "[i]n appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is entitled to a great weight . . . . [T]here is thus a strong initial presumption that the compromise as negotiated herein under the [c]ourt's supervision is fair and reasonable." In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (internal quotations omitted).

The factors to be considered in evaluating a class action settlement include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). In applying these factors, the Court may neither substitute its judgment for that

of the parties who negotiated the settlement nor conduct a mini-trial of the merits of the action. Weinberger, 698 F.2d at 74.

> [T]he role of a court in passing upon the propriety of the settlement of a . . . class action is a delicate one . . . . [W]e recognize[] that since the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial.

Newman v. Stein, 464 F.2d 689, 691-92 (2d Cir. 1972) (internal quotations omitted). The Court must determine whether the settlement is within a range that reasonable and experienced attorneys could accept considering all relevant risks, facts and circumstances. See Weinberger, 698 F.2d at 74; Grinnell, 495 F.2d at 455.

Procedural Fairness

The parties reached this settlement after years of hotly contested litigation. The parties not only were embroiled in discovery disputes, they litigated motions for class certification and cross-motions for summary judgment. Similarly, the settlement was a product of extensive arm's length negotiations, including many settlement conferences before me over a period of nine months. Based on my involvement in the settlement discussions, I know that the settlement was negotiated in good faith and at arm's length. There is no hint that coercion or collusion affected the process.

In addition, plaintiffs' counsel, Lawrence Katz recommends that this Court approve the settlement. As Judge Ross found,

Lawrence Katz, then of the firm Katz & Kleinman, P.L.L.C., has the requisite experience and competency to represent plaintiffs in actions such as this case regarding violations of the FDCPA.

Because of all these circumstances, the presumption of procedural fairness applies here.

Complexity, Expense and Likely Duration of Litigation

Despite the grant of summary judgment on liability, the continuation of this litigation would have resulted in delay and further expense for both parties. The litigation has already lasted seven years and even if there was a prompt trial on damages, there could be further delay should there be post-trial motions and an appeal. Absent a settlement, the costs incurred by continuing this litigation would likely outweigh any potential recovery. The delay inherent in further litigation would also reduce the value of any potential recovery. See Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002). On the other hand, the settlement provides certain compensation to the class members now rather than awaiting an eventual resolution that would result in further expense without any definite benefit.

Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." Id. Approximately 2,058 class members were sent a Notice advising them of the terms of the

settlement and their right to opt out of the class. No class members have opted out or objected to the settlement. This factor weighs in favor of approval of the settlement.

The Stage of the Proceedings and Amount of Discovery Completed

The stage of the proceedings and the amount of discovery completed are evaluated to ensure that the parties "have a clear view of the strengths and weaknesses of their cases." In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986). Since this settlement was reached only after determinations of motions to compel discovery, for summary judgment and for class certification, counsel undoubtedly was able to evaluate the merits of plaintiffs' claims, the strengths of the defenses asserted by defendants and the value of plaintiffs' claims. See Maley, 186 F. Supp. 2d at 364. Thus, this factor also weighs in favor of approving the settlement.

Risks Involved in Establishing Liability and Damages and in Maintaining the Class Action Through Trial

Notwithstanding the granting of summary judgment on liability, the plaintiffs face a possible appeal by defendants. More importantly, the class members could very well recover less in damages than they will receive under the settlement. Plaintiff has requested only statutory damages in this case for what is a technical violation of the FDCPA. The FDCPA also limits damages to the lesser of $500,000 or 1% of the net worth

of the defendant.  See 15 U.S.C. § 1692k(a)(2)(B).  Based on discovery, plaintiffs' counsel believes that the settlement fund likely exceeds 1% of the net worth of the defendant.  The risk that plaintiffs would receive a smaller judgment than the settlement was (appropriately) a significant factor in plaintiff's decision to settle.

Collectibility and Defendants' Ability to Withstand a Greater Judgment

A related consideration weighing in favor of settlement is defendant's "dire financial condition," which makes "obtaining a greater recovery than provided by the [s]ettlement . . . difficult."  See Maley, 186 F. Supp. 2d at 365.  Even if plaintiffs secured a judgment greater than the settlement, after trial, defendant's financial condition could decline further in the future and would undoubtedly be impacted by the costs of further litigation.

The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All Risks of Litigation

The determination of a reasonable settlement "is not susceptible of a mathematical equation yielding a particularized sum."  In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 130 (S.D.N.Y. 1997) (internal quotation omitted).  On the contrary, "in any case there is a range of reasonableness with respect to a settlement."  Newman, 464 F.2d at 693.  As the Second Circuit has stated, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself,

mean that the proposed settlement is grossly inadequate and should be disapproved." Grinnel, 495 F.2d at 455. "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." Id. at 455 n.2.

This settlement is well within the range of reasonableness, particularly in light of the value of obtaining certain compensation quickly. See In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("much of the value of a settlement lies in the ability to make funds available promptly"). As discussed above, there is a significant risk that plaintiffs would secure a smaller verdict than the settlement or would not be able to collect any judgment.

The Plan of Allocation

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized - namely, it must be fair and adequate." In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quotation omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." Id. (quotation omitted). In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. See PaineWebber, 171 F.R.D. at 133. Courts also consider the reaction of the class to a plan of allocation.

See Maley, 186 F. Supp. 2d at 367; PaineWebber, 171 F.R.D. at 126.

The only issue of allocation posed is the fact that the named plaintiff, Elaina Aramburu, would be receiving an incentive award payment of $2,000 while other class members would be receiving a fraction of that amount. However, the Notice sent to all of the class members stated the exact amount that the class representative would receive and the projected amount of compensation that other class members would receive. No objections to the settlement have been received and the class members filing claims will, in fact, receive a greater amount than projected in the Notice. Plaintiff is entitled to some incentive award given her effort in bringing this action and her participation in discovery. Moreover, the incentive award is within the range of those found reasonable in other FDCPA cases. See, e.g., Gross v. Wash. Mut. Bank, No. 02 CV 4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006) (approving $5,000 incentive award); Orloff v. Syndicated Office Sys., Inc., No. Civ. A. 00-CV-5355, 2004 WL 870691, at *7 (E.D. Pa. Apr. 22, 2004) (same); Bonnett v. Educ. Debt Servs., Inc., No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) (approving $4,000 incentive award).

Attorneys' Fees

As the prevailing party, the class is entitled to an award of reasonable attorneys' fees and costs. See 15 U.S.C. § 1692k(a)(3). Moreover, attorneys who create a common fund from which members of a class are compensated are entitled to "a reasonable fee--set by the court--to be taken from the fund." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000) (internal citation omitted). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court." Id. at 47. Fees may be awarded under either the lodestar or percentage of the funds methods. Wal-Mart Stores, 396 F.3d at 122; see Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984); Maley, 186 F. Supp. 2d at 370.

Regardless of which method is utilized, courts in this Circuit must consider the following factors in determining what constitutes a reasonable fee: (1) the risk of the litigation; (2) the magnitude and complexities of the litigation; (3) time and labor expended by counsel; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. See Goldberger, 209 F.3d at 50 (quoting In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

Here, plaintiffs faced a high risk of a limited recovery given the statutory cap on damages. See Denney v. Jenkens & Gilchrist, 230 F.R.D. 317, 352 (S.D.N.Y. 2005). As to the merits, while plaintiffs eventually prevailed on certifying a

class and on summary judgment, the risk of the litigation is measured as of the time the action was filed.  See Goldberger, 209 F.3d at 50.  Although this case is not as complex as a large scale national class action, plaintiffs' claims involved questions of law as to whether the letters violated the FDCPA.

In addition, as noted above, counsel was qualified to conduct this litigation and has extensive experience in FDCPA cases.

Plaintiffs request attorneys' fees and costs of $25,000. Plaintiffs' counsel has submitted only limited contemporaneous billing records which reflect that he spent over 56 billable hours on work undertaken in connection with this case since May 2007.  Mr. Katz estimates that he will spend an additional 10 hours to administer the class, including preparing for and attending the fairness hearing.  Since this action was commenced in 2002, the parties conducted discovery, briefed motions for class certification and summary judgment and negotiated the settlement.  Based on my familiarity with prior proceedings, this Court has no reason to doubt that counsel spent considerably more than the 56 hours reflected in the billing records submitted. See ct. doc. 82-3 (billing records).  Even if the Court considered only 66 hours in calculating the lodestar, plaintiffs' counsel's rate would amount to approximately $380 per hour, less than rates recently found reasonable by other judges in this court in FDCPA cases.  See Rodriquez v. Pressler & Pressler, L.L.P., CV-06-5103, 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16,

2009) (approving hourly rate of $450 in FDCPA case); <u>Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.</u>, No. CV-04-2195, 2006 WL 3681138, at *9 (E.D.N.Y. Dec. 11, 2006) (approving hourly rate of $420 in FDCPA case); <u>Gross</u>, 2006 WL 318814, at *6 (approving hourly rate of $400 in FDCPA case). Although the fees requested exceed the settlement amount, the fee application is reasonable in light of the work completed and the benefits for the class.

## CONCLUSION

For the foregoing reasons, the settlement is approved.

**SO ORDERED.**

Dated:   Brooklyn, New York
         April 22, 2009

                                    /s/
                                    MARILYN DOLAN GO
                                    UNITED STATES MAGISTRATE JUDGE